ELISA MILO *v.* RICHARD LYNCH.

The prescription of a redhibitory action after one year from the date of the sale, does not apply where the seller knew of the vice, and neglected to declare it to the purchaser. C. C. 2512.

APPEAL from the District Court of St. Mary, *King*, J.

*Crow, T. H.* and *W. B. Lewis*, for the plaintiff.

*Splane* and *Stewart*, for the appellant.

MORPHY, J. The petitioner seeks to recover seven hundred dollars, the price of a mulatto boy named Edmund, whom she purchased from the defendant, on the 23d of February, 1841, with a full warranty against all redhibitory vices and defects. She alleges that soon after she took possession of the slave, he ran away, and had been in the habit of running away from his owner, or owners before she bought him ; that she went with the slave to the defendant, and informed him that she could not keep him, and that he ought to annul the sale, and return the

price ; that he agreed to refund to her the $700, with interest, but stated that she should have another slave to work for the interest of the money until the same could be paid; that a slave was accordingly put into her possession by the defendant, who told her that if she was pleased with the slave, she should have him in place of the one he had taken back; that, shortly after the delivery of this negro, the defendant took him back, and has since kept both of the slaves, and the money she had paid for Edmund.　She further alleges that some time after, the defendant offered to pay her $500 of the $700 he had received, but that conceiving herself entitled to the whole price, she refused his offer, and, on the 28th of December, 1841, brought suit against him, to annul the sale, in which suit, for want of sufficient evidence, a judgment of nonsuit was entered up against her.　The defendant pleaded the general denial, averring that the negro was never in the habit of running away, not even after he got into the plaintiff's possession, and that the boy was abused by the plaintiff, which caused him to run away,　This case was submitted to a jury below, who gave their verdict in favor of the plaintiff.　After making a motion for a new trial, which was overruled, the defendant appealed, and in this court pleaded the prescription of one year to the plaintiff's action, which was brought only, in April, 1843.

The evidence shows that some time after the sale, the plaintiff returned the boy Edmund to the defendant, and received from him another slave named Frederick, who remained in her possession a short time ; but that the slave, having been bitten by dog, was sent for by his master to be taken care of, and that he died in the possession of the latter; that Edmund ran away twice from the plaintiff, and three times from the defendant, after he was returned to him.　The first time he ran away from the defendant he was found in the jail of Plaquemines, in the parish of Iberville, to which parish he had escaped on board of a steamboat.　When he was apprehended for the third time by the defendant, he was lodged in jail, where he has remained ever since.　The defendant several times sent word to the plaintiff to take the boy back, but she always answered that she would have nothing more to do with him.　The record furnishes

no positive evidence of the slave having ran away before the sale to the plaintiff; but the circumstance of his running away five times after the sale, during a period of about fifteen months, coupled with that of the defendant taking him back on being informed that the plaintiff would not have him because he was a runaway, no doubt satisfied the jury, as it does us, that he was in the habit of running away before the sale, and that the defendant was well aware of it. In November, 1841, the parties appear to have agreed to a reconveyance of the slave to defendant; but on their meeting at the parish judge's office for that purpose, Lynch was willing to pay only $500, while the plaintiff insisted on having the whole price returned to her. On that occasion, she asserted that the slave was a runaway, which was not denied by the defendant. George Sennet, one of the witnesses, testifies that before the sale to plaintiff, George Lynch, the brother of the defendant, offered to sell him in New-Orleans, a mulatto boy about seventeen years of age, who was at that time run away: that subsequently he wrote to him (witness), that he had repossessed himself of the boy, and would sell him for $650. It appeared on the trial, that Edmund was a mulatto boy of about 16 years of age, and had been sent up from New-Orleans to the defendant's plantation, but a very short time previous to the purchase made of him by the plaintiff. Although the defendant produced a witness to show that his brother had a runaway boy named Peter, the jury may have come to the conclusion that Edmund was the runaway boy offerred to be sold to the witness. However this may be in point of fact, the whole evidence, in our opinion, fully sustains the verdict they have found.

With regard to the prescription of one year pleaded in this court, the record does not show at what time a judgment of nonsuit was rendered against the plaintiff, in the suit brought on the 28th of December, 1841. The prescription, interrupted by that suit, must, we apprehend, have remained suspended until the date of such nonsuit. In the absence of any evidence on the subject we would have remanded the case for a trial on that plea, according to article 992 of the Code of Practice, were we not satisfied on a review of the evidence, that the vendor in this

case was not ignorant of the redhibitory vice of this slave. The very law on which he rests his plea of prescription, provides that it does not apply to cases where the seller had knowledge of the vice, and neglected to declare it to the purchaser. Civil Code, art. 2512.

*Judgment affirmed.*